

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:14-MJ-_282_ |
| PIYUSH BACHUBHAI PATEL (01) | |

## CRIMINAL COMPLAINT

I, Special Agent Frank Super, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

*From on or about August, 2009 to the present, in the Northern District of Texas, defendant PIYUSH BACHUBHAI PATEL devised a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing that scheme, he caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds, all done in violation of 18 U.S.C. §1343.*

## INTRODUCTION

1. My name is Frank B. Super, Special Agent with the Federal Bureau of Investigation. I am assigned to work complex financial crimes in the Fort Worth Resident Agency. I have been working complex financial crimes here in Fort Worth since 1997.

2. The information contained in this Complaint is the result of my own investigation as well as information provided to me by other investigators and law enforcement officers. In each instance when I recite information from such others, I have gained that information either by talking directly to such investigators and law enforcement officers or reviewing written reports of their investigation, or both. This Complaint accurately summarizes the evidence I discovered during my investigation; it does not, however, contain every detail known to me about the investigation.

## THE SCHEME TO DEFRAUD

3. J.N., a resident of Mansfield, Texas, was a retired American Airlines Pilot. In early August 2009, J.N. was introduced to PIYUSH BACHUBHAI PATEL. PATEL lived in Clovis, California, and through e-mails and telephone conversations, PATEL told J.N. that he was an investment consultant doing business as ELITE FINANCIAL SERVICES and 777 CONSULTING SERVICES. PATEL told J.N. that he had a unique investment strategy that involved "trading in the margins." PATEL went on to tell J.N. that he had a group of 80-90 clients, that he "pooled" his clients' funds together in order to maximize profits, and that as a result of the pooling strategy, PATEL's investments realized annual returns of between 18%-178%. PATEL said that he paid his clients based upon their share of cash in the "pool." PATEL told J.N. that he charged each client an annual fee of $30,000 for clients who had less than one million dollars invested, and $50,000 a year for those with over one million dollars invested. PATEL also charged each client an additional fee of 10% of his total returns. PATEL recommended that clients roll over their returns until their accounts reached $500,000, and then clients could safely withdraw $5,000 a month without touching their principal.

4. Based upon PATEL's representation about the investment, J.N. decided to invest with PATEL. On or about August 20, 2009, J.N. wire transferred $249,553 from his account at JPMorgan Chase Bank in Mansfield, Texas, to PATEL's 777 Consulting Services LLC account at Wachovia Bank in Delaware.

5. Just prior to J.N.'s wire transfer to PATEL, the 777 Consulting Services LLC account at Wachovia Bank had a balance of $25. After PATEL received J.N.'s money, he transferred the money to the following accounts: 1) $155,000 to PATEL's day trading account located at Stock USA; 2) $30,000 to Hanied Investments; 3) $25,000 to United Home Loans to pay PATEL's mortgage; and 4) $40,000 in cash.

6. Prior to J.N.'s wire transfer, PATEL's Stock USA account balance was near zero, and then climbed to $155,000 after the infusion of J.N.'s money. PATEL then proceeded to lose most of the money in his Stock USA account, leaving a balance of less than $40,000 by January 1, 2010.

7. On or about January 22, 2010, PATEL sent an e-mail to J.N.. Included in the e-mail was an account statement representing the balance of J.N.'s investment with PATEL. PATEL stated that after the payment of his fees and taxes, J.N.'s account balance rose to $298,765. At the time, J.N. did not know that almost all of his investment with PATEL had already been lost or spent by PATEL. The e-mail that J.N. received from PATEL deceived J.N. into believing that the investment with PATEL had appreciated substantially, when in fact, PATEL actually lost or spent the money.

8. Based upon the false material representations in PATEL's e-mail, J.N. decided to invest more money with PATEL. On or about February 17, 2010, J.N. wire transferred $90,000 from his account at Bank of America in Mansfield, Texas to PATEL's 777 Consulting Services LLC account at Wachovia Bank in Delaware.

9. When PATEL received J.N.'s $90,000 investment, PATEL transferred $29,000 to his Stock USA day trading account, bringing the balance in the account up to approximately $60,000. PATEL disbursed the remainder of J.N.'s money to the following: 1) $20,000 to PATEL's personal checking account at Wells Fargo Bank, 2) $20,500 to Dr. Abdul Hanifi and 3) $17,000 to Jose Chaparro.

10. By the end of 2010, PATEL's Stock USA day trading account was under $40,000, and by March 2011 the balance hit zero.

11. In January 2011, J.N. had not received an account statement from PATEL. J.N. called and e-mailed PATEL in order to get a 2010 account statement. PATEL eventually called J.N. and said that his secretary made a "clerical error" and failed to send J.N. his statement. While on the telephone, PATEL told J.N. that his account balance had grown to $476,500.

12. In May 2011, J.N. contacted PATEL in order to set up a monthly disbursement from the investment account. Based upon PATEL's false statements, J.N. erroneously believed that his account would top $500,000 by June, and J.N. wanted to make an immediate withdrawal of $20,000, and then take out $9,000 a month thereafter. PATEL expressed his agreement with J.N., and on or about July 28, 2011, PATEL wire transferred $20,000 to J.N.'s Bank of America account. However, no monthly payments were sent.

13. After receiving the $20,000 payment, J.N. had trouble contacting PATEL, so he hired a private detective to find PATEL. J.N. learned that PATEL moved to Blythe, California. On January 30, 2012, J.N. and his wife traveled to Blythe and confronted PATEL about the investment account. PATEL said that he still had 80 clients and his investment account had four million dollars in it. PATEL claimed that two men "scammed him," and that was why he was behind in payments. PATEL promised to return the J.N.'s money to them plus an additional $10,000. PATEL never sent any money to J.N. after the meeting.

## INTERSTATE WIRE COMMUNICATIONS

14. During the course of his scheme to defraud, and in furtherance of it, PATEL caused a number of interstate wire communications to be sent. For instance, on or about August 20, 2009, J.N., acting at PATEL's direction and because of false material representations made by PATEL, wire transferred $249,553 from his account at JPMorgan Chase Bank in Mansfield, Texas, to PATEL's 777 Consulting Services LLC account at Wachovia Bank in Delaware. On or about January 22, 2010, PATEL sent an email from California to J.N. in the Northern District of Texas which materially misrepresented the balance of J.N.'s investment account. On or about February 17, 2010, NICKASON, acting at PATEL's direction and because of false material representations made by PATEL, wire transferred $90,000 from his account at Bank of America in Mansfield, Texas to PATEL's 777 Consulting Services LLC account at Wachovia Bank in Delaware.

## CONCLUSION

15. Based upon the foregoing facts and information, I submit there is probable cause to believe that PATEL devised a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing that scheme, he caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds, all done in violation of 18 U.S.C. § 1343.

Special Agent Frank Super
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence, 1st day of July 2014, at 2:15 a.m./p.m., in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

Criminal Complaint - Page 4 of 4